## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ASHLEY KRISTA SAIZ,

      Plaintiff,

    vs.                                   CIV No. 22-742 DHU/KK

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

      Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

      THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 21) dated January 26, 2023, challenging the determination of the Acting Commissioner of the Social Security Administration ("the Commissioner") that Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, or to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. On April 28, 2023, the Commissioner filed a response, and on May 24, 2023, Plaintiff filed a reply. (Docs. 27; 30.) The Court has thoroughly reviewed the administrative record, the parties' briefs, and the relevant law, and for the reasons set forth below, proposes to find that Plaintiff's Motion is well taken and recommends that it be granted. The Court further recommends that the Commissioner's decision denying Plaintiff's claim for benefits be reversed and this matter remanded for further proceedings.

---

[1] By an Order of Reference (Doc. 9) entered on October 12, 2022, United States District Judge David H. Urias referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

## I. BACKGROUND AND PROCEDURAL POSTURE

On February 6, 2020, Plaintiff filed initial applications for disability insurance benefits and social security disability income. (*See* Administrative Record ("AR") 63–64.) Plaintiff alleged that she had become disabled on April 1, 2019, due to Major Depressive Disorder and Anxiety. (AR 65, 77.) Plaintiff's date last insured is in the future, on March 31, 2024. (AR 65, 77.) Plaintiff's application was denied at the initial level on July 10, 2020 (AR 65–88), and at the reconsideration level on April 16, 2021 (AR 89–110). Plaintiff requested a hearing (AR 134–36), which ALJ Michelle K. Lindsay conducted telephonically on April 7, 2022 (*see* AR 37–62). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Thomas Bott. (AR 37–62.)

On June 7, 2022, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (AR 12–24.) Plaintiff requested that the Appeals Council review the ALJ's decision (AR 7–8), and on September 19, 2022, the Appeals Council denied the request for review (AR 1–3), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On October 7, 2022, Plaintiff filed the Complaint in this case seeking review of the Commissioner's decision. (Doc. 1.)

## II. LEGAL STANDARDS

### A. Standard of Review

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the

agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks, brackets, and citation omitted omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citations omitted). If the ALJ fails to do so, "the

case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

### B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920(a)(4). If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *See Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24–25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.  THE ALJ'S DETERMINATION

ALJ Lindsay reviewed Plaintiff's disability claims pursuant to the five-step sequential evaluation process. (AR 12–24.) First, the ALJ found that Plaintiff met the SSA's insured status requirements through March 31, 2024, and had not engaged in substantial gainful activity since her alleged onset date of April 1, 2019. (AR 15.) The ALJ found at step two that Plaintiff suffered from severe impairments of "a major depressive disorder, a generalized anxiety disorder, a panic disorder, and a post-traumatic stress disorder (PTSD)" and the non-severe impairments of "obesity, dry eye syndrome, myopia, and migraines." (AR 15–16.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of listed impairments under Appendix 1 of the SSA's regulations. (AR 17.)

Next, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative findings, and Plaintiff's own subjective symptom evidence. (*See* AR 18–22.) Having done so, the ALJ concluded that Plaintiff possessed an RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations:  The claimant is able to understand, remember, and carry out simple instructions with a reasoning level of no more than two. She is able to maintain attention and concentration to perform and persist at simple tasks at a reasonable pace for two hours at a time without requiring redirection to task. She requires work that does not involve interaction with the general public. Interactions with coworkers and supervisors should be superficial and incidental to the work performed. She requires work involving no more than occasional change in the routine work setting and no more than occasional independent goal setting or planning. She requires work that does not involve the use of public transportation or travel to unfamiliar places as part of the job.

(AR 18–19.) Based on this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 22.)

At step five, however, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 23.) The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 1, 2019, though the date of [the ALJ's] decision." (AR 24.)

## IV.  DISCUSSION

Plaintiff contends that the following issues require reversal: (1) the ALJ "fail[ed] to properly assess the prior administrative findings of the state agency . . . non-examining mental consultants"; (2) the ALJ "faile[ed] to properly assess the opinions of psychological consultative examiner Clifford Morgan, PhD"; (3) the ALJ "fail[ed] to properly assess the opinion of treating psychiatrist Thai Nguyen, MD"; and (4) the ALJ failed to base the RFC "on substantial evidence because she failed to account for [Plaintiff's] subjective allegations of mental health symptoms, contrary to Social Security Ruling ('SSR') 96-8p, SSR 16-3p, and case law." (Doc. 21 at 1.) The Court agrees that the ALJ erred in assessing the prior administrative findings of the non-examining state agency psychological consultants. Because this error requires reversal, the Court will not address Plaintiff's remaining claims of error, as they may be affected on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### A.  The ALJ erred by failing to properly assess the prior administrative findings of non-examining state agency consultants Drs. Walker and McGaughey.

Two non-examining state agency consultants – psychiatrist Scott Walker, M.D. and psychologist Mark McGaughey, Ph.D. – completed Mental Residual Functional Capacity Assessments ("MRFCAs") with respect to Plaintiff's disability claims. (*See* AR 73–75, 85–87, 97–99, 108–10.) The prior administrative findings contained in those assessments made up part of the evidence upon which the ALJ relied in assessing Plaintiff's RFC. (*See* AR 20–21.) Plaintiff contends, however, that "[t]he ALJ failed to properly assess the inconsistencies between the

moderate limitations assessed by [Drs. Walker and McGaughey] and the narrative explanation they provided." (Doc. 21 at 10 (citing AR 20–21, 73–75, 108–09).)

Because Plaintiff applied for disability benefits after March 27, 2017, ALJ Lindsay was required to evaluate the prior administrative findings[2] under the revised regulations found in 20 C.F.R. §§ 404.1520c and 416.920c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 & n.8 (10th Cir. July 6, 2021). Under these regulations, no specific evidentiary weight or deference is given to prior administrative findings. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, they are evaluated on equal footing as other medical opinions using the factors enumerated in the regulations. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Of the enumerated factors, "supportability" and "consistency" are the "most important," and an ALJ must explain how she considered these factors when assessing the prior administrative findings' persuasive value. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Moreover, when an ALJ considers the persuasiveness of a medical source's opinions or findings, she must "consider all relevant evidence in the case record," *Silva v. Saul*, No. CIV 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R. §§ 404.1520b, 416.920b), and must provide the Court with a "sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen*, 436 F.3d at 1165 (quotation omitted).

Non-examining state agency psychological consultants, like Drs. Walker and McGaughey, typically use MRFCA forms to assess a claimant's mental RFC. *See Young v. Berryhill*, No. CIV 16-1024 GJF, 2018 WL 840022, at *14 n.11 (D.N.M. Feb. 13, 2018); Program Operation Manual System ("POMS") DI § 24510.060(A)(1). The MRFCA form directs a consultant to first "record

---

[2] Findings from non-examining state agency consultants, like Drs. Walker and McGaughey, are classified as "prior administrative findings[,]" but the rules for weighing them are the same as for weighing medical opinions. *See Vigil v. Saul*, No. CV 20-632 CG, 2021 WL 2117184, at *5 (D.N.M. May 25, 2021) (citing 20 C.F.R. §§ 404.1531a, 404.1520c).

preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function" in a question-and-answer worksheet.[3] *Silva* v. *Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. Aug. 25, 2016) (quoting POMS DI § 24510.061(A)). Next, the MRFCA form directs the consultant to "prepare a narrative statement of mental RFC." *Id*. (quoting POMS DI § 24510.061(A)). If a consultant determines that a claimant has moderate limitations in an area of functioning, he must describe the "degree and extent of the capacity or limitation" in "a narrative format." *Id*. (quoting POMS DI § 24510.063(B)(2)). At the end of the MRFCA form, there is a section entitled "MRFC – Additional Explanation," which is reserved for "[a]ny other assessment information deemed appropriate."[4] (*See* AR 75, 87, 98, 109.)

In the worksheet portion of their MRFCAs, Drs. Walker and McGaughey found that Plaintiff was markedly limited in two areas of mental functioning: (1) interacting appropriately with the general public; and (2) traveling in unfamiliar places or using public transportation. (AR 73–75, 85–87, 97–98, 108–09.) The consultants also found Plaintiff moderately limited in numerous areas of mental functioning, including:

- understanding and remembering detailed instructions;

---

[3] Previously, state agency consultants completed special form SSA-4734-F4-SUP, which was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). *Vienna* v. Saul, No. 2:18-cv-00783-LF, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019). Although MRFCAs completed through eCAT no longer include the same section labels, "parties and the courts have continued to refer to the checkbox portion of each MRFCA as 'Section I,' and the 'narrative' portion(s) as 'Section III.'" *Id*. Here, the Court refers to these separate sections of the MRFCA as the "worksheet portion" and the "narrative portion" or "narrative discussion."

[4] The instructions printed on the MRFCA form provide:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaption). Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box.

(*See, e.g*., AR 73.)

- carrying out detailed instructions;
- maintaining attention and concentration for extended periods;
- performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances;
- sustaining an ordinary routine without special supervision;
- working in coordination with or in proximity to others without being distracted by them;
- making simple work-related decisions;
- completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods;
- accepting instructions and responding appropriately to criticism from supervisors;
- getting along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- responding appropriately to changes in the work setting; and
- setting realistic goals or making plans independently of others

(AR 73–75, 85–87, 97–98, 108–09.) Despite identifying both marked and moderate mental limitations in the worksheet portion of their MRFCAs, Drs. Walker and McGaughey did not follow the MRFCA forms' instructions to provide a substantive explanation in the narrative portion of each section. (*See* AR 74–75, 86–87, 97–98, 108–09.) Instead, with one limited exception,[5] they wrote "Depression Anxiety" in the spaces designated for "[e]xplain[ing] in narrative form" the limitations found in a given area of mental functioning. (AR 74–75, 86–87, 97–98, 108–09.) The consultants expounded upon the functional manifestations of Plaintiff's limitations in the "Additional Explanation" portion of their MRFCAs, where they indicated that Plaintiff retained the capacity to:

---

[5] In the category of "understanding and memory," the consultants wrote "Refer to summary of medical evidence on [Psychiatric Review Technique form]" in the section designated for narrative discussion. (*See* AR 73, 85, 97, 108.) This stands in contrast to the consultants' reference to "Depression Anxiety" in the space designated for explaining limitations in narrative form. (*See* AR 74, 86, 97, 108.) In the portion of the Psychiatric Review Technique form designated for providing "Additional Explanation," the consultants summarized Plaintiff's treatment records and function reports and indicated that they found Plaintiff's allegations "longitudinally consistent" but observed that she appeared to "function[] as a full time mother" and "has been largely reluctant to try psychotropics." (AR 72, 84, 92, 103.) Plaintiff's arguments, however, relate to moderate limitations contained in the category of "sustained concentration and persistence." (*Compare* Doc. 21 at 7, *with* AR 73–74, 85–86, 97, 108.)

> understand, remember, and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms; exercise reasonable judgment; interact appropriately with coworkers; supervisors but NOT the general public on a superficial basis.

(*See* AR 75, 87, 98, 109.) Because the consultants' more thorough discussions of Plaintiff's mental RFC were provided in the "Additional Explanation" sections at the end of the MRFCAs, the Court refers to the consultants' responses in those sections as their "narrative discussion."

In her evaluation of the prior administrative findings of Drs. Walker and McGaughey, the ALJ indicated that she "agree[d] that [Plaintiff] has no more than moderate limitations except for interacting with the public, using public transportation, or traveling to unfamiliar places." (AR 20.) The ALJ did not delve into any of the moderate limitations assessed by Drs. Walker and McGaughey in the worksheet portion of their MRFCAs. (*See* AR 20–21.) She did, however, describe the prior administrative findings as supported and consistent. (AR 20–21.) She concluded that the consultants *supported* their findings when they "summariz[ed] the treatment and examination findings relevant to [Plaintiff's] impairments and referenced [her] activities of daily living." (AR 20–21.) She also found the consultants' findings *consistent* "with generally normal mental status examinations throughout the record and her response to treatment when compliant." (AR 20–21 (citing AR 102–04, 449–707, 764–848, 874–906, 947–75).) Overall, the ALJ characterized Drs. Walker and McGaughey's findings as "persuasive." (AR 20.)

Relevant to Plaintiff's arguments here, the ALJ assigned a mental RFC that restricted Plaintiff to "understand[ing], remember[ing], and carry[ing] out simple instructions with a reasoning level of no more than two"; "maintain[ing] attention and concentration to perform and persist at simple tasks at a reasonable pace for two hours at a time without requiring redirection to task"; and "no more than occasional change in the routine work setting [or] independent goal

setting or planning." (AR at 18–19.) This RFC was similar in some respects to the narrative discussions provided by Drs. Walker and McGaughey, but not identical.[6] (*Compare* AR 18–19, *with* AR 75.) In any event, Plaintiff maintains that the ALJ failed to properly address inconsistencies that were present in the prior administrative findings. (Doc. 21 at 7.) Specifically, she maintains that the consultants' MRFCA narrative discussions do not "account for or describe the effect of the moderate limitations both [consultants] assessed in [1] performing activities within a schedule, maintaining regular attendance, and being punctual; [2] sustaining an ordinary routine without special supervision; [3] completing a normal workday/workweek; and [4] making work related decisions." (*Id.*) The Commissioner, on the other hand, insists that it was the consultants' narrative discussion that the ALJ was required to incorporate into her RFC assessment, not the worksheet-portion moderate limitations. (Doc. 27 at 9 (citing *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015).) The Commissioner goes further, suggesting that Plaintiff "manufacture[s] inconsistencies where none exist." (Doc. 27 at 9 (citing *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015)).) To resolve this issue, the Court closely examines both Tenth Circuit instruction on the evaluation of MRFCA findings and the alleged inconsistencies in the prior administrative findings.

First, the Court begins with the premise that by assessing moderate limitations in Plaintiff's abilities to perform enumerated mental functions, the state agency consultants, at minimum, meant to indicate that these abilities were "impaired." *See* POMS DI § 24510.063(B)(2) (discussing the

---

[6] The consultants found Plaintiff capable of "interacting appropriately with coworkers" (AR 75), whereas the ALJ limited Plaintiff to "[i]nteractions with coworkers [that were] superficial and incidental to the work performed" (AR 19). The ALJ included additional restrictions that were not included in the consultants' narrative discussions: to "no more than occasional change in the routine work setting and no more than occasional independent goal setting or planning" and to "work that does not involve the use of public transportation or travel to unfamiliar places as part of the job." (*Compare* AR 19, *with* AR 75.) In both cases, Plaintiff was limited to understanding, remembering and carrying out *simple* instructions. (*See* AR 18–19, 75.) The ALJ also specified that Plaintiff was limited to instructions with a reasoning level of no more than two. (*See* AR 19.)

completion of the worksheet portion of SSA-4734-F4SUP and providing that the box for "moderately limited" on a MRFCA form should be checked "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired"); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[A] moderate impairment is not the same as no impairment at all."). Even so, an ALJ "*generally* . . . need only consider and discuss [a state agency consultant's] findings in the narrative discussion portion" of the MRFCA. *Gutierrez v. Kijakazi*, No. Civ. 20-552 KK, 2021 WL 4710508, at *3 (D.N.M. Oct. 8, 2021) (citing *Carver*, 600 F. App'x at 618–19) (emphasis added). This general rule is derived from the POMS and from Tenth Circuit case law interpreting the POMS, both of which indicate that the narrative portion of the MRFCA, not the worksheet portion, is for recording a medical consultant's actual mental RFC assessment. *See* POMS DI §§ 24510.060(B)(4)(a)–(b); 24510.065(A); 25020.010(B)(1); *see also Carver*, 600 F. App'x at 619 (summarizing the POMS as "provid[ing] that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, [such that] adjudicators are to use the Section III narrative as the RFC assessment").

Significantly, though, the Tenth Circuit recognizes an exception to the general rule governing an ALJ's consideration of MRFCA findings. *Gutierrez*, 2021 WL 4710508, at *4. That is, when a consultant's MRFCA narrative discussion "contradicts or omits without explanation one or more limitations found in the worksheet" portion of the MRFCA, the ALJ's RFC assessment must also consider and account for the worksheet-portion limitation(s), and the MRFCA cannot be considered part of the substantial evidence supporting the ALJ's RFC assessment. *Id.* (citing *Carver*, 600 F. App'x at 619). In other words, an ALJ may rely exclusively on the MRFCA's narrative discussion *only if* that "narrative does not contradict any [worksheet-portion] limitations and describes the effect each [worksheet-portion] limitation would have on the

claimant's mental RFC . . . ." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (citations omitted); *see also Lee*, 631 F. App'x at 541 (explaining that an ALJ should not "turn a blind eye to any moderate limitations enumerated in the [worksheet portion] that are not adequately explained" in the narrative portion); *Carver* 600 F. App'x at 620 (reasoning that an ALJ may disregard limitations found in an MFRCA's worksheet portion if the narrative portion "adequately encapsulate[s]" those limitations).

Plaintiff clearly invokes the recognized exception by insisting that the consultants' narrative discussions fail to properly account for, and in fact contradict, the limitations they assessed in the worksheet portion of their MRFCAs. (*See* Doc. 21 at 7–10.) Plaintiff further contends that the ALJ committed reversible error by failing to account for the consultants' worksheet-portion moderate limitations. (*Id*.) The Commissioner, however, insists that the Tenth Circuit's rejection of an "essentially identical" argument in *Fannin v. Commissioner*, *SSA*, 857 F. App'x 445, 446 (10th Cir. 2021) governs. (Doc. 27 at 9.) Relying upon *Fannin*, the Commissioner attempts to divert the Court's focus from a comparison of worksheet-portion limitations and narrative discussions, urging the Court to instead heed the *Fannin* court's explanation "that '[c]hallenges to whether an ALJ assessment of [RFC] incorporate limitations in [the worksheet portion]' of State agency consultants' findings 'ask the wrong question.'" (*Id*. at 10 (quoting *Fannin*, 857 F. App'x at 447).)

In *Fannin*, the Tenth Circuit determined that a state agency consultant's narrative RFC[7] was "consistent with" his worksheet-portion moderate limitations. 857 F. App'x at 447–48. As a result, the court concluded that the ALJ did not err in conveying to the vocational expert the

---

[7] The state agency's narrative explanation found that Fannin "retain[ed] the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions [and] respond appropriately to changes in routine work setting." *Fannin*, 857 F. App'x at 448.

consultant's narrative RFC conclusion in the form of a hypothetical. *Id*. Although this Court acknowledges similarities between Plaintiff's arguments and those rejected by the court in *Fannin*, the logic underlying the court's holding supports, rather than undermines, Plaintiff's position. Consistent with the exception discussed above, *Fannin* teaches that so long as a consultant's MRFCA narrative discussion is consistent with their worksheet limitations, as the court found the narrative discussion was there, the ALJ does not err in adopting the consultant's narrative RFC.[8] *See id.* at 448. Following this logic, the converse is also presumably true: if the narrative discussion is *not* consistent with the moderate limitations assessed in the worksheet portion of the MRFCA, it would be error for the ALJ to adopt it without some explanation as to why she was rejecting the worksheet-portion limitations. *See Carver*, 600 F. App'x at 619; *Gutierrez*, 2021 WL 4710508, at *3–4. As discussed more fully below, the consultants' narrative discussions here fall into the latter category, and the ALJ was therefore required to explain why she rejected the worksheet-portion moderate limitations.

Moreover, this Court has previously described aspects of the court's rationale in *Fannin* as "divergent" from its reasoning in other cases. *See Ortiz v. Kijakazi*, No. Civ. 21-1016 KK, 2023 WL 2538834, at *9 (D.N.M. Mar. 16, 2023) (citing *Fannin*, 857 F. App'x 445) (other citations omitted) (explaining that a "lack of consistency" in the case law "is likely a product of divergent rationales offered by the Tenth Circuit as it grapples with whether and how an RFC assessment must incorporate limitations noted in the worksheet portion of an MRFCA").[9] As a result, this

---

[8] In *Fannin*, the ALJ adopted the consultant's narrative RFC when he conveyed it to the vocational expert in the form of a hypothetical. *See Fannin*, 857 F. App'x at *448.

[9] The Court, in *Ortiz*, also noted inconsistency in this District over whether an ALJ must consider moderate limitations assessed by a state agency consultant in the worksheet portion of their MRFCA, which it attributed in part to divergent rationales offered by the Tenth Circuit in cases like *Fannin*. 2023 WL 2538834, at *9 n.7 (citing *Vienna*, 2019 WL 4686718, at *4 n.11; *see also Silva*, 203 F. Supp. 3d at 1163 n.4; *Rush v. Saul*, 389 F. Supp. 3d 957, 969 (D.N.M. 2019); *Mills v. Berryhill*, No. CV 16-573 CG, 2017 WL 3149414, at *10 (D.N.M. June 9, 2017))).

Court looks to the Tenth Circuit's more instructive, less "divergent" guidance. For example, it relies upon the reasoning expressed by the Tenth Circuit in *Lee*, *Fulton*, and *Carver*, mentioned parenthetically above.

More broadly, the Tenth Circuit has consistently held that when an ALJ assigns an RFC that contradicts a medical source opinion, the ALJ must explain why she did not account for that opinion in her RFC determination. *See Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007); *Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007). If the ALJ fails to adequately explain her rejection of a medical source opinion concerning the claimant's RFC, the case must be remanded for the ALJ to do so. *See Haga*, 482 F.3d at 1208–09; *Frantz*, 509 F.3d at 1302-03; *Givens*, 251 F. App'x at 568. Moreover, in *Parker v. Commissioner, SSA*, the Tenth Circuit conceded that "the agency can sometimes account for mental limitations by limiting the claimant to particular kinds of work" but explained that "[u]nless the connection (between the limitation and the work) is obvious . . . the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." 772 F. App'x 613, 616 (10th Cir. 2019) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203–04 (10th Cir. 2015); *Wayland v. Chater*, No. 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996)). These holdings, related generally to an ALJ's duty to account for limitations assessed by medical sources, compliment the rationales expressed in *Lee*, *Fulton*, and *Carver*.

In addition to *Fannin*, the Commissioner relies upon a handful of cases from this District. (Doc. 27 at 10–11 (discussing the holdings in *Aragon v. Kijakazi*, No. 21-977-KK, 2023 WL 1990485, at *11–12 (D.N.M. Feb. 14, 2023); *Leah P. v. Kijakazi*, No. 21-cv-407-SCY, 2022 WL 3042928, at *5–6 (D.N.M. Aug. 2, 2022); *Padilla v. Berryhill*, No. 1:17-cv-0329-GJF, 2018 WL 3830930, at *14–15 (D.N.M. Aug. 13, 2018).) First, the Commissioner contends that in *Aragon*

the undersigned "rejected the argument that the ALJ did not adequately address ratings of moderate limitation in adaption in the RFC finding." (Doc. 27 at 10 (citing *Aragon*, 2023 WL 1990485, at *11–12).) As Plaintiff points out, though, *Aragon* did not address an ALJ's evaluation of state agency consultants' MRFCA findings. (Doc. 30 at 3–4.) Instead, it involved the ALJ's consideration of medical evidence and subjective complaints related to the plaintiff's mental impairments, where the ALJ assessed a "moderate limitation" in the plaintiff's ability to adapt or manage herself under the "paragraph B" criteria. *See Aragon*, 2023 WL 1990485, at *11–12. The undersigned determined that the plaintiff failed to establish that the ALJ's RFC limitation to "work 'performed in the same location every day'" did not adequately address her adaption limitations, observing that the plaintiff there, in contrast to Plaintiff here,[10] had not "specif[ied] what functional limitation the ALJ should have adopted . . . [or] how that limitation would have changed the outcome of this case." *See id*. Given that there is little, if any, meaningful overlap between the issues addressed in *Aragon* and the issues presently before the Court, the Commissioner's reliance on *Aragon* is misplaced.

*Leah P.* and *Padilla*, on the other hand, are more on point. In each of these cases, the plaintiffs argued that an ALJ failed to adequately account for state agency consultants' worksheet-portion moderate limitations and, instead, improperly picked and chose among the moderate limitations. *See Leah*, 2022 WL 3042928, at *3–4; *Padilla*, 2018 WL 3830930, at *14–15. And in each case the judge determined that the ALJ's RFC assessment adequately accounted for the consultants' worksheet-portion moderate limitations. *Leah*, 2022 WL 3042928, at *5 (reasoning that the RFC assigned by the ALJ "matche[d]" the state agency consultants' opinions); *Padilla*,

---

[10] In this case, Plaintiff argues that the ALJ should have adopted a limitation in her ability to maintain a regular work schedule, a requirement for occasional special supervision, and a need for additional breaks during the workday. (Doc. 30 at 4.) Additionally, she references testimony by the vocational expert in which he testified that these additional limitations would preclude competitive employment. (Doc. 30 at 4 (citing Doc. 21 at 10, 22).)

2018 WL 3830930, at *14 (holding that the state agency consultants' worksheet-portion moderate limitations were "accounted for by the ALJ's limitation of Plaintiff to simple work and simple decisions related to that work."). Neither judge discussed in any detail the foundational issue presented here – whether inconsistencies between the worksheet and narrative portions of a consultant's MRFCA means the ALJ could not exclusively rely on the narrative portion. *See Leah*, 2022 WL 3042928, at *5 ("The question is not whether there is a conflict between the [ALJ's] RFC and the worksheet-style moderate limitations . . . ; the question is whether the [ALJ's] RFC matches the [consultants'] opinions on what kind of work Plaintiff can perform despite the doctors' previously assessed limitations") (emphasis and citation omitted); *Padilla*, 2018 WL 3830930, at *15 (concluding that "the ALJ did not err in failing to include [in the RFC assessment] certain moderate limitations" found by the state agency consultants in the worksheet portion of their MRFCAs). Putting aside these two cases, which strike the Court as outliers, the Court notes a growing consensus in this District that an ALJ must address moderate limitations assessed in the worksheet portion of an MRFC if the narrative discussion contradicts or omits them without explanation.

Plaintiff, for example, points to three cases from this District in support of her claim of reversible error: *Gutierrez*, 2021 WL 4710508, *Villanueva v. Berryhill*, Civ. No. 16-cv-999 SCY, 2018 WL 354674 (D.N.M. Jan. 10, 2018), and *Pitts v. Kijakazi*, No. CV 20-1205 CG, 2021 WL 5049441 (D.N.M. Nov. 1, 2021). (Doc. 21 at 8–10.) In *Villanueva*, Judge Yarbrough determined that because the state agency consultant did not "limit or clarify the import of [a] moderate limitation" that he assessed in the worksheet portion of his report, the ALJ was required, "[u]nder binding Tenth Circuit precedent" to "either account for [the] medical source's moderate limitation in the RFC or explain why the ALJ rejected that moderate limitation." 2018 WL 354674, at *4

(citing *Haga*, 482 F.3d at 1208; *Frantz*, 509 F.3d at 1302-03). Judge Yarborough held that the "ALJ's failure to address all of the moderate limitations [the consultant] found . . . , either by accounting for those limitations in the RFC or otherwise explaining why he did not include them in the RFC, constitute[d] error" for which remand was required. *Id*. Similarly, in *Pitts*, Judge Garza found that because the state agency consultants' narrative discussions in their MRFCAs did not "encapsulate" the moderate limitations they assessed in the worksheet portions of their MRFCAs, the ALJ erred in relying on the consultants' findings as substantial evidence to support his RFC determination. 2021 WL 5049441, at *6 (citing *Mahboub v. Saul*, 1:19-cv-1216 JHR, 2021 WL 2209888, at *12 (D.N.M. June 1, 2021); *Fulton*, 631 F. App'x at 502; *Lee*, 631 F. App'x at 541). The Court has reached similar conclusions in *Gutierrez*[11] and in other cases. *See, e.g.*, *Salazar v. Kijakazi*, No. Civ. 21-149 KK, 2022 WL 4365864, at *6-9 (D.N.M. Sept. 21, 2022); *Lucero v. Kijakazi*, No. Civ. 21-425 KK, 2022 WL 2315957, at *9-12 (June 28, 2022); *Edgell v. Kijakazi*, No. Civ. 21-269 KK, 2022 WL 1987846, at *4-9 (D.N.M. June 6, 2022); *Romero v. Kijakazi*, No. Civ. 21-249 KK, 2022 WL 1553295, at *8-10 (D.N.M. May 17, 2022); *Ortiz*, 2023 WL 2538834, at *8.

Turning to the moderate mental limitations assessed by Drs. Walker and McGaughey, the Court observes a heightened vocational significance as to four subsets of mental abilities, the requirements for which are "usually strict": (1) maintaining regular attendance, (2) being punctual within customary tolerances, (3) completing a normal workday and workweek without interruptions from psychologically based symptoms, and (4) performing at a consistent pace

---

[11] In *Gutierrez*, the undersigned concluded that there was "no explanation, either in [the consultant's] narrative discussion or in the ALJ's written decision, of how [the plaintiff] could meet the demands of unskilled work despite . . . [assessed] moderate limitations." 2021 WL 4710508, at *6. Because the relationship between the assessed moderate limitations and the restrictions contained in the ALJ's RFC assessment was not "obvious," the undersigned concluded that "the ALJ's failure to either incorporate or discuss these limitations constituted reversible error." *Id*.

without an unreasonable number and length of rest periods. *See* POMS DI § 25020.010(B)(3)(e),
(i)). Not only are these strictly-required mental abilities critical for performing unskilled work, *see*
POMS DI § 25020.010(B)(3)(e),(i), the POMS indicate that they are necessary for performing *any*
job, *see* POMS DI § 25020.010(B)(2)(a). In light of this heightened vocational significance, the
Court begins and ends its analysis with these mental abilities. *Cf. Vienna v. Saul*, No. 2:18-cv-
00783-LF, 2019 WL 4686718, at *6 (D.N.M. Sept. 26, 2019) (reasoning that because these
abilities "are work-related mental abilities that are 'critical for performing unskilled work,' . . . the
ALJ must adequately address them in the RFC.") (citation omitted). Ultimately, because the Court
finds that the ALJ committed reversible error by failing to account for moderate limitations in
these critical abilities, it need not address the remaining moderate limitations assessed by Drs.
Walker and McGaughey in the worksheet portion of their MRFCAs.

> ### i. Maintaining Regular Attendance and Being Punctual Within Customary Tolerances

The Court first considers the moderate limitation, per Drs. Walker and McGaughey, in
Plaintiff's ability to "maintain regular attendance[] and be punctual within customary
tolerances."[12] Plaintiff insists that neither Dr. Walker nor Dr. McGaughey included in their
narrative discussion any work-related restrictions aimed at addressing moderate limitations in this
area of mental functioning. (Doc. 21 at 7.) The Commissioner, in contrast, contends that the
consultants' worksheet-portion limitations are "subsumed" in their narrative discussions. (Doc. 27
at 11.) In evaluating the parties' arguments, the Court bears in mind that regulations do not require

---

[12] In conjunction with their finding that Plaintiff was moderately limited in attendance and punctuality, the consultants also determined that she was moderately limited in her ability to "perform activities within a schedule." (*See, e.g.*, AR 74 (finding Plaintiff "moderately limited" in "[t]he ability to *perform activities within a schedule*, maintain regular attendance, and be punctual within customary tolerances" (emphasis added)).) However, because the POMS indicate that "[m]aintaining a schedule is not [a] critical" mental ability for performing unskilled work, the Court focuses its analysis on the assessed moderate limitations in attendance and punctuality, for which "tolerances are usually strict." *See* POMS DI § 25020.010(B)(3)(e).

a "direct correspondence" between a work-related restriction and an assessed mental limitation. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2010) (reasoning that there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity question"). Still, if the connection between the mental limitation and the RFC is not "obvious," the agency "must ordinarily explain how the work-related limitation accounts for mental limitations reflected in a medical opinion." *Gutierrez*, 2021 WL 4710508, at *4 (quoting *Parker*, 772 F. App'x at 616).

Here, the Court discerns no obvious connection between a moderate limitation in the ability to maintain regular, punctual attendance and any restriction in the consultants' narrative discussions. At most, the consultants indicated that Plaintiff retained the ability to "complete a routine work day without significant interruptions from psychologically-based symptoms." (*See* AR 75, 87, 98, 109.) But the consultants did not articulate how the *retention* of that ability accounted for a moderate limitation in maintaining attendance and punctuality. The Commissioner does not make a compelling argument, or any argument for that matter, to the contrary. Moreover, the consultants' finding that Plaintiff could complete a routine workday corresponds more directly to a *different* ability for which the consultants also assessed a moderate limitation: "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." (*See* AR 74, 86, 97, 108.) As the Court discusses below, the consultants' narrative discussions are directly at odds with their assessed moderate limitation in this area of mental functioning. Ultimately, because the Court cannot say that the consultants' narrative findings adequately encapsulated the moderate limitations they assessed in Plaintiff's ability to maintain attendance or punctuality, it follows that the MRFCAs do not constitute substantial evidence

supporting the ALJ's RFC finding. *See Bosse v. Saul*, No. 2:18-cv-00475-LF, 2019 WL 3986046, at *4 (D.N.M. Aug. 23, 2019).

A related question is whether the ALJ's RFC assessment adequately accounted for or discussed the moderate mental limitation in maintaining attendance and punctuality. Given that the consultants' narrative discussions omitted any restrictions that would obviously account for such a moderate limitation, the onus was on the ALJ to address it. *See Fulton*, 631 F. App'x at 502; *Carver*, 600 F. App'x at 618–20. Without specifically discussing the assessed limitations in attendance and punctuality, the Commissioner simply suggests that the ALJ's "even more restrictive RFC assessment" adequately accounted for *all* of the consultants' worksheet-portion moderate limitations. (Doc. 27 at 11.) The Court disagrees.

Like the consultants before her, the ALJ failed to specify what, if any, restrictions she included in her RFC assessment to account for moderate limitations in Plaintiff's ability to attend work on time. Indeed, despite her purported acceptance of the consultants' findings as supported and consistent with the record evidence, the ALJ neither adopted limitations in this impaired area of mental functioning or explained the omission of such restrictions. (*See* AR 18–21.) As a result, Plaintiff has established error with respect to the consultants' assessed moderate limitations in the critical areas of attendance and punctuality. *See Gutierrez*, 2021 WL 4710508, at *6 (finding reversible error where that there was no obvious relationship between a state agency consultant's moderate limitation in maintaining attendance and punctuality and the ALJ's RFC restrictions to simple tasks and decisions, work not involving production quotas or an assembly line pace, and limited interaction with others); *see also Vienna*, 2019 WL 4686718, at *7 (finding reversible error where the ALJ, by assessing an RFC that limited the plaintiff to unskilled work, "erred in failing to incorporate or to explain why he rejected" a state agency consultant's moderate limitation in the

plaintiff's "ability to perform activities within a schedule, maintain regular attendance, and be punctual").

### ii.   Completing a Normal Workday Without Interruptions from Psychologically-Based Symptoms and Performing at a Consistent Pace

Plaintiff also insists that both the consultants' narrative discussions and the ALJ's RFC assessment omit any restrictions that would account for the consultants' assessed moderate limitations in Plaintiff's ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Doc. 21 at 8–9.) Once again, this moderate limitation was indicated in the worksheet-portions of the consultants' MRFCAs. (AR 74, 86, 97, 108.) As alluded to above, Drs. Walker and McGaughey's narrative discussions, which opine that Plaintiff *retained* the ability "attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms," directly contradict their earlier worksheet-portion findings that Plaintiff was "moderately limited" in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*See* AR 74–75, 86–87, 97–98, 108–09.) In effect, Drs. Walker and McGaughey first found Plaintiff *impaired* in her abilities to complete a normal workday and workweek and to persist at a consistent pace without excessive breaks. Then, in their narrative finding, they determined the opposite. They did so without offering any explanation that would reconcile this apparent contradiction.

Nor is there otherwise an obvious connection between the restrictions included in Drs. Walker and McGaughey's narrative discussion and the assessed moderate limitation in completing a normal workday and workweek and in performing at a consistent pace without excessive breaks.

Although Drs. Walker and McGaughey's narrative discussions limited Plaintiff to "understanding, remembering, and carrying out simple instructions," they gave no indication that this restriction, essentially to unskilled work, somehow encapsulated a moderate limitation in completing a normal workday and workweek and persisting at a consistent pace. (*See* AR 75, 87, 98, 109.) Notably, a restriction to understanding, remembering, and carrying out *simple* instructions appears more logically aimed at addressing Plaintiff's moderate limitations in her abilities to understand, remember, and carry out detailed instructions. (*See* AR 73, 85, 97, 108.) And, moreover, it has been suggested that a moderate limitation in completing a normal workday and workweek and performing at a consistent pace without excessive breaks "would likely interfere with work in almost any setting." *See, e.g., Bosse*, 2019 WL 3986046, at *8–9 (citing *Chapo*, 682 F.3d at 1290); *Ortiz*, 2023 WL 2538834, at *8 (citation omitted); *Estrada v. Kijakazi*, No. CV 21-0653 KRS, 2022 WL 4289936, at *8 (D.N.M. Sept. 16, 2022) (citations omitted).

Turning to the ALJ's mental RFC assessment, the Court likewise finds no obvious connection between the ALJ's restrictions (i.e., to simple work with a reasoning level of no more than two, at a reasonable pace for two hours at a time, no more than occasional change in routine work setting, and no more than occasional independent goal setting or planning), and a moderate limitation, per Drs. Walker and McGaughey, in Plaintiff's abilities to complete a normal workday and workweek and to perform at a consistent pace without excessive breaks. *See Edgell*, 2022 WL 1987846, at *7 (reasoning that the connection between a moderate limitation in this same ability and the work-related limitations to simple tasks with occasional changes in the routine work setting and occasional independent goal setting or planning was "not clear"); *cf. Lucero*, 2022 WL 2315957, at *10–11 (reasoning that the connection between a moderate limitation in this ability and the work-related limitations to more than simple but less than complex tasks, occasional

interactions with others, and few changes in a routine work setting was "unclear"). Under the circumstances of this case, the ALJ should have accounted for a moderate limitation in this area of functioning, either by explaining why she rejected it or by incorporating it into the RFC. Absent explanation from the ALJ as to how she accounted for this vocationally-critical moderate mental limitation, the Court will not speculate that she did. *See Edgell*, 2022 WL 1987846, at * 7; *Lucero*, 2022 WL 2315957, at *11.

With few exceptions, the weight of persuasive authority in this District supports a finding of reversible error on this ground. *See, e.g.*, *Estrada*, 2022 WL 4289936 (remanding for rehearing where the ALJ failed to address an opined moderate limitation in the claimant's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms on a normal break schedule); *Tafoya v. Saul*, No. CV 19-920 CG, 2020 WL 3489539 (D.N.M. June 26, 2020) (same); *Vienna*, 2019 WL 4686718 (same); *Vamvakerides v. Colvin*, No. CV 14-00897 SCY, 2016 WL 10538097 (D.N.M. Apr. 7, 2016) (same); *but see Trujillo*, No. Civ. 16-851 GBW, 2017 WL 2799981, at *9 (D.N.M. June 23, 2017) (concluding that the ALJ properly incorporated into his RFC a marked limitation in completing a normal workday/workweek without interruptions from psychologically based symptoms by limiting Plaintiff to a simple, routine, and repetitive work in a routine, predictable, low-stress environment, with only occasional contact with supervisors and coworkers and minimal contact with the public). The undersigned has repeatedly found reversible error when an ALJ fails to account for a state agency psychological consultant's moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms on a normal break schedule. *See, e.g.*, *Salazar*, 2022 WL 4365864, at *6–9; *Lucero*, 2022 WL 2315957, at *9–12; *Edgell*, 2022 WL 1987846, at

*4–9; *Romero*, 2022 WL 1553295, at *8-10; *Ortiz*, 2023 WL 2538834, at *9–10. The Court recommends the same result here.

### B. The ALJ's errors in evaluating the prior administrative findings were not harmless.

Plaintiff insists that the ALJ's errors in addressing prior administrative findings were harmful and reversible, because "[a] proper evaluation of the prior administrative findings would have resulted in a change to [her] RFC, precluding competitive work." (Doc. 21 at 10 (citing *Thompson v. Saul*, No. Civ. 20-672 KK, 2021 WL 2711378, at *8–9 (D.N.M. July 1, 2021)).) In support, Plaintiff points to testimony from the vocational expert. (*Id.* (citing AR 59–60).) The vocational expert testified, in pertinent part, that if an individual cannot maintain a work schedule on a consistent basis or if they require extra breaks during the day, it would eventually be preclusive to competitive employment. (AR 59–61.) For this reason, and because the mental abilities of maintaining attendance, being punctual, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without excessive breaks are abilities that are critical for performing *any* job, *see* POMS DI 25020.010(B)(2)(a), the Court finds that the ALJ's errors in evaluating the prior administrative findings were not harmless. A more restrictive RFC to account for impairments in these abilities may well result in a finding of disability during the relevant period in this case, and the Court cannot confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual questions at issue in any other way. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

## V. CONCLUSION

Having conducted a thorough review of the administrative record, the Court concludes that the ALJ committed reversible error in her review of Plaintiff's application for disability insurance

benefits and supplemental security income by failing to adequately evaluate prior administrative findings in accordance with controlling legal standards. Accordingly, the Court recommends that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 21) be GRANTED, and that the Commissioner's decision denying Plaintiff's disability claims be REVERSED and this matter REMANDED to the Commissioner for further proceedings in accordance with this PFRD.

**Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(C), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE